**William NICHOLS, Plaintiff,**

**v.**

**Richard S. LAYMON, Guardianship Administrator, Department of Children and Family Services; Albert Neely, Director of the Children's Division of Cook County Department of Public Aid; Robert Bussell, M.D., Employed by the Juvenile Court of Cook County; Eleanor Doyle, Employed by Department of Children and Family Services; Sarah Mauer, Employed by the Division of Cook County Department of Public Aid; Frank Dettenbach, Employee of the Illinois Department of Mental Health and Developmental Disabilities; Enrich Visioso, M.D., Employee of Department of Children and Family Services; Victor Platt, Clinical Director, Elgin Mental Health Center; Dr. Leonard Horecker, Clinical Director, Chester Mental Health Center; Vernon Uffelman, Director, Chester Mental Health Center; David Clark, Employee of the Illinois Department of Mental Health and Developmental Disabilities; James Lampros, Caseworker, Department of Children and Family Services; Robert Mackie, Superintendent, Elgin Mental Health Center; Coun-**

Patrick T. Murphy, Goldberg & Murphy, Ltd., Chicago, Ill., for plaintiff.

Karen R. Goodman, Ill. Dept. of Children & Family Services, John A. Dienner, III, Asst. State's Atty., Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

CROWLEY, District Judge.

This is an action for damages resulting from the alleged violations of plaintiff's First, Fifth, Eighth, Ninth and Fourteenth Amendment rights. 42 U.S.C. § 1983. Jurisdiction is asserted under 28 U.S.C. §§ 1331 and 1343.

The facts are fully set forth in Judge Will's Memorandum Opinion of May 5, 1978. Briefly, the complaint alleges that when plaintiff became a ward of the State of Illinois in 1960, he was erroneously designated to be three years older than his actual age. This error, which was not rectified until 1974, resulted in classifying plaintiff as mentally retarded. According to the complaint, because of the incorrect age assignment and because of certain policies and practices of Cook County, the State of Illinois, their officials and employees, plaintiff was not provided adequate treatment and was subjected to cruel and unusual punishment while residing in the Arthur J. Audy Home, the Elgin State Mental Hospital and the Chester State Mental Hospital.

The unconstitutional practices and policies include indiscriminately mixing neglected and dependent children with delinquent minors at the Audy Home, denying boarding rates in excess of a standard rate for children with specialized needs except under vague circumstances and employing methods of "treatment" which were akin to punishment and bore no relationship to care and rehabilitation.

Currently before the Court are the motions for summary judgment by defendants the County of Cook and Albert Neely.[1] Defendants' major contention is that the action against them is barred by the statute of limitations.

All parties agree that the applicable statute of limitations is Ill.Rev.Stat. ch. 83, § 16 (1977). *Beard v. Robinson*, 563 F.2d 331, 338 (7th Cir. 1977), *cert. denied sub nom. Mitchell v. Beard*, 438 U.S. 907, 98 S.Ct. 3125, 57 L.Ed.2d 1149 (1978). That statute provides that the action must be brought within five years of the date it accrued.

Defendants County of Cook and Neely, the Director of the Children's Division of Cook County Department of Public Aid during the time plaintiff was confined in the Audy Home, contend that the limitations period should be calculated from March, 1969, when plaintiff left the County's control. Since the action was not brought against the County until February

---

1. Numerous defendants were originally named in the complaint who also made motions for summary judgment. Before the Court ruled on their motions, however, on plaintiff's motion, defendants Robert Mackee, Victor Platt, Enrich Vicioso, M.D., Frank Dettenbach, Vernon Uffelman and Leonard Horecker were dismissed from this action.

1, 1977 and against Neely until February 17, 1978, it is barred.[2]

A special provision operates to lengthen the limitations period. That statute provides:

*If the person entitled to bring an action... is at the time the cause of action accrued, within the age of 18 years, or incompetent... he or she may bring the action within 2 years after the disability is removed.* Ill.Rev.Stat. ch. 83, § 22 (1977).

The parties disagree about the proper interpretation of the statute.

Defendants contend that the plaintiff does not fall within the age exception because he did not bring the action within two years of his eighteenth birthday, even assuming he was assigned an incorrect age. Additionally, defendants argue that the incompetency exception of Section 22 only applies to persons who have been adjudicated incompetent by a court, and that no court has adjudged plaintiff incompetent. Thus, they conclude, the exception does not apply.

Plaintiff responds that under the Juvenile Court Act, he remains a minor until his twenty-first birthday. Ill.Rev.Stat. ch. 37, § 701–13 (1977). However, plaintiff's principal contention is that he was incompetent during the entire course of events giving rise to this action and is incompetent still.

■■ Whether or not plaintiff is considered a minor until his twenty-first birthday under the Juvenile Court Act is irrelevant to the application of Section 22. That provision explicitly extends the limitations period for two years after the plaintiff's eighteenth birthday. Therefore, a plaintiff's physical age is the determinative criterion.

Assuming plaintiff's age was designated erroneously, he became eighteen on March 3, 1974. Since the action was filed after March 3, 1976, it was not brought within two years of plaintiff's eighteenth birthday.

The question of whether plaintiff falls within the incompetency exception of Section 22 does not lend itself to facile resolution. Neither the statute itself nor the Illinois courts provide guidance about the meaning of the term incompetent as it is used in the current statute.

However, in *Peach v. Peach*, 73 Ill.App.2d 72, 218 N.E.2d 504 (1966), the court construed that provision prior to its amendment. The relevant portions of the statutes are identical except that under the previous statute an extended limitations period was provided for a person who was "insane" or "mentally ill". Ill.Rev.Stat. ch. 83, § 22 (1975) (amended 1976).

The court held that the words "insane" or "mentally ill" used in connection with Section 22 "contemplate that the sufferer could not comprehend the nature of the act giving rise to his cause of action or his rights, and that his condition is such as to require care in a hospital or under a guardian or conservator for his own welfare or the welfare of others." *Peach v. Peach*, 73 Ill. App.2d 72, 83, 218 N.E.2d 504, 509 (1966).

In reaching its decision, the court relied upon the definition of "mentally ill person" embodied in the Mental Health Code. That term was defined as "[a]ny person afflicted with mental disease to such an extent that for his own welfare, or the welfare of others or of the community, he requires care, treatment, detention and training, and

---

**2.** The County asserts that it was not brought into the action until 1978. Although the County was dismissed on February 17, 1978, it was named as a defendant in the original complaint. Amendments are deemed to relate back to the date of the original pleading. Fed.R.Civ.P.

15(c). Thus, the action against the County commenced on February 1, 1977.

Neely was not named as a defendant until February 17, 1978, when the amended complaint was filed.

which renders him incapable of caring for and managing his own estate." Ill.Rev. Stat. ch. 91½, § 1–8 (1951).

The definition of "incompetent" contained in the Probate Act is similar.[3] Specifically, both statutes exact the same test for determining whether a person is "mentally ill" or "incompetent". That is, a person must be rendered incapable of managing his person or estate.

The similarities in the former and current Section 22 and the definition of mentally ill and incompetent indicate that the Illinois legislature did not intend to change the class of people permitted to invoke that statute's grace period. Therefore, the *Peach* court's standard for determining that class is equally applicable to the amended provision.

Plaintiff has undergone numerous psychiatric and psychological evaluations during his institutionalization. Some reports of these evaluations are attached to the pleadings. In addition, a letter and an affidavit from a psychiatrist who treated plaintiff from 1972 through 1977 have been submitted.

These documents indicate that plaintiff suffers from serious emotional and mental disorders. According to the reports, plaintiff is not capable of functioning as an adult and his judgment is impaired, particularly in his ability to distinguish right from wrong. The psychological evaluation conducted at Ridgeway Hospital in 1976 concluded that plaintiff was unable to live outside of an institution because of his inability to make judgments and to exercise control over his actions. Although it was found that plaintiff had not become seriously destructive to others, the potential for violent tendencies was recognized. Moreover, the

plaintiff's psychiatrist from 1972 through 1977 states, by affidavit, that plaintiff was "at all times incompetent, mentally ill, and unable to adequately take care of himself and his personal and legal affairs."

Defendants are incorrect in their assertion that these facts, without an accompanying adjudication, are insufficient to make Section 22 operable. They indicate that plaintiff was totally incapable of comprehending the consequences of his own decisions much less those imposed upon him by the various institutions in which he resided. All of the reports state that he was not able to distinguish right from wrong. This lack of judgment demonstrates that the plaintiff could not understand "the nature of the act giving rise to his cause of action or his rights." *Peach v. Peach*, 73 Ill.App.2d 72, 83, 218 N.E.2d 504, 509 (1966).

Further, until 1977, plaintiff remained a ward of the Illinois Department of Children and Family Services. Although that fact does not impute incompetency, Ill.Rev.Stat. ch. 91½, § 2–101 (1977), the psychiatric evaluations show that institutional care was required not only because plaintiff lacked the occupational skills necessary to function in the outside world, but because his emotional deterioration prevented him from doing so. Indeed, there was even a suggestion that releasing plaintiff might result in danger to others. Therefore, plaintiff's "condition [was] such as to require care in a hospital ... for his own welfare or the welfare of others." *Peach v. Peach*, 73 Ill.App.2d 72, 83, 218 N.E.2d 504, 509 (1966).

Based on these facts, which defendants do not contradict by any evidence cognizable under Fed.R.Civ.P. 56, plaintiff was incompetent within the meaning of Section 22 at least until 1977, when he was released

---

**3.** Ill.Rev.Stat. ch. 3, § 112 (1977):

   *The word "incompetent" in this Act includes an insane or mentally ill person, an idiot, an imbecile, feeble minded or mentally deficient person, any person who because of old age, physical incapacity, or imperfection or deterioration of mentality is incapable of*

*managing his person or estate and any person who because of gambling, idleness, debauchery or the excessive use of intoxicants or drugs, so spends or wastes his estate as to expose himself or his family to want or suffering.*

from the State's custody. Therefore, the action was timely brought against these defendants; it is not barred by the statute of limitations.

Defendants also raise the defense of qualified immunity. Alternatively, they assert that they cannot be held liable under the doctrine of *respondeat superior.*

■ Defendants enjoy a qualified immunity. *Procunier v. Navarette,* 434 U.S. 555, 98 S.Ct. 855, 55 L.Ed.2d 24 (1978). That immunity dissolves, however, if defendants knew or should have known that his actions would violate established constitutional rights or if his actions were taken with the impermissible intention of depriving plaintiff of his constitutional rights. *Procunier v. Navarette,* 434 U.S. 555, 562, 98 S.Ct. 855, 859–60, 55 L.Ed.2d 24 (1978); *Wood v. Strickland,* 420 U.S. 308, 321–22, 95 S.Ct. 992, 1000–01, 43 L.Ed.2d 214 (1975).

The first test is objective, requiring an analysis of contemporary constitutional principles. The second is subjective, requiring an evaluation of defendant's state of mind or good faith. *Perry v. Elrod,* 436 F.Supp. 299, 304 (N.D.Ill.1977).

The issue of whether the right to adequate treatment and the right to be free from cruel and unusual punishment in this setting were established principles of constitutional doctrine at the time of defendant's alleged actions has been decided by Judge Will. It is, therefore, the law of the case.

■ The doctrine of the law of the case does not tie the hands of one district judge to "undo the work of his predecessor in the same action." *Schaefer v. First National Bank of Lincolnwood,* 509 F.2d 1287, 1294 (7th Cir. 1975), *cert. denied,* 425 U.S. 943, 96 S.Ct. 1682, 48 L.Ed.2d 186 (1976). However, unless compelling reasons exist for not doing so, which are not present here,[4] the doctrine should be applied. *See Chicago and Northwestern Transportation Co. v. United States,* 574 F.2d 926 (7th Cir. 1978).

■ Judge Will held that since the right to adequate treatment was not a well-settled constitutional right until 1974, *Nelson v. Heyne,* 491 F.2d 352 (7th Cir.), *cert. denied,* 417 U.S. 976, 94 S.Ct. 3138, 41 L.Ed.2d 1146 (1974), plaintiff could not recover money damages for acts alleged to have occurred before that time. *Collins v. Bensinger,* 374 F.Supp. 273 (N.D.Ill.), *aff'd* 506 F.2d 1405 (7th Cir. 1974), *cert. denied,* 422 U.S. 1058, 95 S.Ct. 2683, 45 L.Ed.2d 710 (1975). Judge Will also ruled that plaintiff was entitled to seek compensatory relief based on his Eighth Amendment claims pertaining to acts that occurred while he was confined in the Audy Home, Elgin State Hospital and the Chester Mental Health Center.

Defendant Neely also argues that there are no disputed issues of fact that he acted in good faith and without the intention to cause a deprivation of plaintiff's constitutional rights. These contentions invoke consideration of the second prong of the qualified immunity test.

The arguments of the County on the issues of knowledge and intent solely relate to Neely. However, because Neely was the Director of the Children's Division of the Cook County Department of Public Aid and he is accused of knowing that placing plaintiff in the Audy Home for such an extended period violated his constitutional rights, the issues will be illuminated by allegations against the County.

The complaint alleges that although the Audy Home was originally designed as a maximum security institution used to confine minors charged with criminal acts, it was also employed by the County to temporarily house neglected and dependent children awaiting permanent placement.

According to the allegations, during the years 1966 through 1969, the County's poli-

---

4. Defendants' assertions that no material issues of fact remain in dispute relate to their lack of knowledge that plaintiff's rights were violated or their good faith in executing their responsibilities. On the other hand, the arguments propounded and cases cited concerning the established nature of the rights at issue are repetitious of those presented to, and addressed by, Judge Will.

cy and practice were to indiscriminately mix neglected and dependent children with delinquent minors at the Audy Home. Plaintiff charges that he was placed in the Audy Home for over two years though he had never been charged with a delinquent act. According to plaintiff, this placement caused permanent psychological injury and violated his right to be free from cruel and unusual punishment in violation of the Eighth Amendment. In addition, plaintiff alleges that although he needed specialized care, resulting in part from his original lengthy stay at the Audy Home, the County's policy was to refuse to pay boarding rates of its wards in excess of a standard rate except under vague circumstances.

While at Audy, plaintiff alleges that among other indignities of being incarcerated in a maximum security prison, he was placed in solitary confinement, forced to run up and down stairs for long periods of time, and never allowed to go outside the Audy Home. Further, he claims that Neely knew that he should not have been sent to facilities for the retarded, knew that plaintiff should not have spent over two years in Audy, and knew that other facilities were available.

Neely responds that he is not qualified to sit in review of diagnosis or mental recommendations concerning plaintiff, and that he relies on the evaluations presented by his staff. Moreover, Neely contends that the Juvenile Court was ultimately responsible for plaintiff's placement. Thus, he did not have any affirmative role in the violations of plaintiff's rights and since he cannot be held liable for the acts of his subordinates under the doctrine of *respondeat superior*, his motion for summary judgment should be granted.

■ It may be, however, that housing dependent and neglected youngsters, such as plaintiff, with delinquent minors and subjecting them to the same conditions of confinement constitutes cruel and unusual punishment. *Cf. Hamilton v. Love*, 328 F.Supp. 1182 (E.D.Ark.1971). There is no evidence that either refutes or substantiates Neely's knowledge of the specific acts

of cruel and unusual punishment allegedly inflicted upon plaintiff. Nevertheless, it is clear that Neely was aware, through reports of his subordinates, that confinement at Audy was causing plaintiff continued emotional deterioration. Thus, Neely knew that plaintiff was confined at Audy for what was determined to be too long a period in light of his specific needs and that the confinement was causing him injury.

Neely also argues that he could not personally authorize placement in a facility whose rates exceeded those set by state guidelines. Neely testified at his deposition that he was not authorized to approve rates that were higher than those established by the guidelines. He was required to make requests from the Director of the Illinois Public Aid Commission.

However, a special rates request was authorized for plaintiff's stay at the Kambly School from 1961 until 1963. Whether or not Neely placed another request for additional rates in 1968, after plaintiff had spent more than two consecutive years at the Audy Home, has not been resolved by the materials presented.

Further, the Court has not been presented with all of the Rules and Regulations by which Neely was guided. Therefore, at this juncture, whether his decisions concerning plaintiff's care and treatment were matters within his discretion or whether he was only acting within the confines of the Rules and Regulations are questions that remain in dispute.

■ The law does not require state or municipal administrators to make Herculean efforts in exercising their duties. However, on a motion for summary judgment, the inferences must be drawn in favor of the non-moving party. *Fitzke v. Shappell*, 468 F.2d 1072, 1077 (6th Cir. 1972).

■ Here the Court is not satisfied that all material issues of fact have been resolved concerning the extent of Neely's knowledge of the conditions of plaintiff's confinement or of his good faith in executing his duties within constitutional bounds. Much of the evidence presented on his be-

half indicates Neely does not recall specific aspects of plaintiff's case. Lack of recollection, however, is not tantamount to the resolution of all material factual issues. Accordingly, the motions for summary judgment of the County of Cook and Neely are denied.

Plaintiff has also moved for the payment of costs incurred in taking the deposition of Dr. Marvin Schwarz pursuant to Fed.R. Civ.P. 26(b)(4)(C). Plaintiff argues that defendants, the Estate of Laymon and the Department of Children and Family Services (DCFS) agreed to pay the costs of the deposition.

Defendants object on the ground that discovery of plaintiff's experts was sought through interrogatories, not deposition testimony, making Rule 26(b)(4)(C)(i) inapplicable, and that it was plaintiff's failure to adequately answer the interrogatory that provoked them to depose Dr. Schwarz.

On December 1, 1978, Judge Will ordered defendants to take the depositions of all persons plaintiff had named in his answer to their interrogatory. Later, defendants determined that Dr. Schwarz was, among all those listed, the person most likely to be called as an expert witness. Despite plaintiff's contentions to the contrary, defendants did not agree at that hearing to assume the costs of the deposition and Judge Will did not rule on that question. That matter is now before this Court.

Rule 26(b)(4)(C) provides:

> *Unless manifest injustice would result, (i) the court shall require that the party seeking discovery pay the expert a reasonable fee for time spent in responding to discovery under subdivisions (b)(4)(A)(ii) and (b)(4)(B) of this rule; and (ii) with respect to discovery obtained under subdivision (b)(4)(B) of this rule the court shall require the party seeking discovery to pay the other party a fair portion of the fees and expenses reasonably incurred by the latter party in obtaining facts and opinions from the expert.*

Subsection (b)(4)(A)(ii) permits the court, upon motion, to order discovery of experts other than interrogatories.

 Judge Will on his own motion ruled that depositions, including that of Dr. Schwarz, were to be taken, and defendants treated Dr. Schwarz as plaintiff's expert. Thus, Rule 26(b)(4)(C)(i) provides an appropriate remedy. Plaintiff's motion for the payment of costs is granted.