Roger A. SAMPSON and Wanda Sampson, Plaintiffs,

v.

ORKIN EXTERMINATING COMPANY, INC., Defendant.

Civ. No. H 84–658.

United States District Court, N.D. Indiana, Hammond Division.

Feb. 24, 1989.

---

David E. Wickland, Munster, Ind., Michael D. Block, Joliet, Ill., for plaintiffs.

Sam E. Isaacs, II, Lexington, Ky., for defendant.

## ORDER

ANDREW P. RODOVICH, United States Magistrate.

This matter is before the Court on the Motion Requesting Plaintiffs to Pay for Expenses in Deposing Defendant's Experts

filed by the defendant, Orkin Exterminating Company, Inc. on November 17, 1987, and the Motion to Tax Costs also filed by the defendant on December 11, 1987. For the reasons set forth below, both motions are GRANTED IN PART.

## Background

Prior to November 19, 1982, the plaintiffs owned a home in Munster, Indiana. One day, the plaintiff, Wanda Sampson, discovered a nest of garden snakes in a window well on the south side of their home. For obvious reasons, Wanda was concerned about the nest of snakes and contacted the defendant, Orkin Exterminating Company, Inc., to kill the snakes. At trial, the evidence was undisputed that Wanda talked to Mark Justak, one of the Orkin salesmen. Since Orkin did not have an established treatment to eradicate snakes, Justak consulted some materials at the Orkin office and conferred with the office manager, Jim Barbeau. In one of the Orkin books, Justak read that chlordane would kill snakes. Justak discussed the problem with Barbeau, and Barbeau instructed Justak to apply Orkil 2X, a pesticide for killing termites, since Orkil 2X contained both chlordane and heptachlor.

When Justak went to the Sampson residence, he sold the Sampsons a six-month contract which included the standard monthly treatment for all household pests plus an application of Orkil 2X, a treatment designed to prevent termites and kill the snakes. On November 19, 1982, an Orkin technician, Tim Chelf, performed the treatment on the Sampson residence. However, contrary to Orkin procedures and the clear warning contained on the label, Chelf applied the Orkil 2X directly on the house near the snake nest and directly on the lawn surrounding the house. Although Wanda was outside during part of the time Chelf was applying the Orkil, she testified that she was not sprayed with the Orkil 2X and did not detect any unusual odors.

Due to improper landscaping, the Sampsons experienced flooding in the basement of their home in the late fall of 1982 and early spring of 1983. Wanda claimed that she came in contact with the chlordane and heptachlor by cleaning up after the flooding and by breathing the air in the basement. Wanda claimed that she became violently ill in February or March, 1983, and that the symptoms continued to the time of trial. The plaintiffs introduced evidence that Wanda was suffering from chlordane poisoning, that the poisoning affected her immune system, and that the damage to her immune system may lead to cancer. The plaintiffs also sought compensation for the damage to their residence. The trial started on August 3, 1987. On August 17, 1987, the jury returned a verdict in favor of Orkin on both the claims for the personal injuries and the damage to the residence.

## Motion Requesting Plaintiffs to Pay for Expenses

Due to the complexity of the issues presented in this case, both parties retained many expert witnesses. By agreement of the parties, both sides took a number of discovery depositions prior to trial. A dispute now has arisen concerning the plaintiffs' failure to pay three of the defendant's experts, Loren D. Koller, R.B. Leidy, and Abba Terr, for the time spent in attending the depositions.

Discovery relating to expert witnesses is controlled by Rule 26(b)(4) which provides in part:

Discovery of facts known and opinions held by experts, otherwise discoverable under the provisions of subdivision (b)(1) of this rule and acquired or developed in anticipation of litigation or for trial, may be obtained only as follows:

(A)(i) A party may through interrogatories require any other party to identify each person whom the other party expects to call as an expert witness at trial, to state the subject matter on which the expert is expected to testify, and to state the substance of the fact and opinions to which the expert is expected to testify and a summary of the grounds for each opinion. (ii) Upon motion, the court may order further discovery by other means, subject to such restrictions as to scope and such provisions, pursuant to subdivision (b)(4)(C) of this rule, concerning fees

and expenses as the court may deem appropriate.

\*       \*       \*       \*       \*       \*

(C) Unless manifest injustice would result, (i) the court shall require that the parties seeking discovery pay the expert a reasonable fee for time spent in responding to discovery under subdivisions (b)(4)(A)(ii) and (b)(4)(B) of this rule; and (ii) with respect to discovery obtained under subdivision (b)(4)(A)(ii) of this rule the court may require, ... the party seeking discovery to pay the other party a fair portion of the fees and expenses reasonably incurred by the latter party in obtaining facts and opinions from the expert.

The intent of Rule 26 is to permit a party to take the deposition of the opposing party's expert witness but to require that the deposition be taken at the expense of the party who requests the deposition. *See generally Eliasen v. Hamilton*, 111 F.R.D. 396, 404 (N.D.Ill.1986); *Dennis v. BASF Wyandotte Corporation*, 101 F.R.D. 301, 304 n. 3 (E.D.Penn.1983); and *Nichols v. Laymon*, 506 F.Supp. 267, 274 (N.D.Ill. 1980).

Orkin contends that its three expert witnesses submitted to depositions based upon the assurance of the plaintiffs' attorneys, David E. Wickland and Michael D. Block, that their witness fees would be paid. Orkin now asks for an assessment of costs against both the Sampsons and their attorneys in the total amount of $4,839.10.

The original motion of Orkin contains the unverified representations of its attorney that Mr. Block and Mr. Wickland obligated themselves to pay the expert witness fees. In an unverified response filed on November 18, 1987, Mr. Block denies any personal liability for the fees. In an unverified reply filed on December 16, 1987, Orkin again takes issue with Mr. Block's representations and requests that the expert witness fees be imposed against the attorneys. On December 21, 1987, Mr. Wickland filed a response to Orkin's original motion along with his own affidavit denying any agreement to accept personal responsibility for the expert witness fees. Finally on December 31, 1987, Orkin filed another reply restating its position that the witness fees should be assessed against both the Sampsons and their attorneys.

■ Neither side has cited any authority on the issue of whether Rule 26(b)(4)(C) permits the assessment of an expert witness fee against the attorneys involved in the case. This Court's independent research has failed to disclose any cases discussing that issue. However, Orkin's request must be rejected for two reasons. First, Orkin has failed to establish that either Mr. Wickland or Mr. Block agreed to accept personal responsibility for the expert witness fees. The unsworn allegations contained in the parties' legal memoranda cannot be relied upon to form the factual basis of a decision. *See generally Perlman v. City of Chicago*, 801 F.2d 262, 265 (7th Cir.1986). Therefore, Orkin has failed to demonstrate an agreement by the attorneys to accept responsibility for the expenses.

Second, unlike Federal Rules of Civil Procedure 11 and 37, Rule 26(b)(4)(C) refers only to "the party" and does not contain any reference to an attorney. In particular, Rule 11 refers to the "signature of an attorney or party" and permits the court to impose a sanction "upon the person who signed [the pleading], a represented party, or both". Rule 37(a)(4) permits an award of sanctions against "the party or attorney" failing to comply with discovery. The absence of any reference to an attorney in Rule 26(b)(4)(C) must be interpreted to mean that the expenses cannot be ordered against a non-consenting attorney.

In the alternative, Orkin has requested that the witness fees be ordered against the attorneys pursuant to 28 U.S.C. § 1927 which provides:

Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorney fees reasonably incurred because of such conduct.

Section 1927 has been compared to Rule 11 and permits sanctions against an attorney who has engaged in unreasonable or im-

proper conduct. *Walter v. Fiorenzo,* 840 F.2d 427, 435 (7th Cir.1988); and *In Re TCI Limited,* 769 F.2d 441, 445 (7th Cir.1985). Additionally, Section 1927 "should be construed narrowly and with great caution". *Mone v. Commissioner of Internal Revenue,* 774 F.2d 570, 574 (2nd Cir.1985); and *Dreiling v. Peugeot Motors of America, Inc.,* 768 F.2d 1159, 1165 (10th Cir.1985). Therefore, the request to assess the witness fees against the attorneys must be denied.

■ The Sampsons also contend that the expert witness fees should not be imposed against them for two reasons. First, Koller was the only expert witness who actually testified at trial. Second, it would be a "manifest injustice" to impose the fees due to their current financial condition.

With respect to the first point, the Sampsons have failed to demonstrate that Orkin acted in bad faith when it indicated that it would call the three expert witnesses at trial. As previously stated, many complex issues were raised in this case. Both sides called a number of expert witnesses who testified concerning the chemical properties of chlordane and the medical aspects of chlordane poisoning. Since it is impossible to predict how a case will develop at trial, a party must be free to change its strategy during the course of the trial. For example, Leidy was not available while the defendant was presenting its case, and his deposition was read to the jury. Absent a showing that Orkin acted in bad faith in designating its trial experts, the Sampsons are responsible for the expert witness fees.

■ The Sampsons further contend that their financial condition should preclude an award of witness fees. In the affidavit which was filed with the plaintiffs' response, Roger Sampson stated:

\* \* \* \* \* \*

7. That since approximately January 29, 1987, and up to and including September 24, 1987, plaintiffs have expended the total sum of approximately $44,000.00 in the advancement of the within cause of action on their behalf, and in payment of varying expenses, costs, and expert witness and physicians fees.

8. That there are still expenses outstanding and claimed owed by plaintiffs for experts and other court reporting services in the approximate sum of $25,-000.00.

Roger also indicated that he was unemployed and that the parties were obtaining a divorce.

The Sampsons have failed to demonstrate that requiring the payment of the expert witness fees would amount to a "manifest injustice". Due to the complexity of this case, it should have been obvious to the plaintiffs and their attorneys that the preparation and trial of this case would be costly. Obviously, the plaintiffs spent a substantial sum of money on the expert witnesses who testified during the presentation of their evidence. If the plaintiffs were operating under budget restrictions, Rule 26(b)(4)(A)(i) permitted the plaintiffs to obtain information about the defendant's trial experts without incurring deposition expenses. Since the plaintiffs chose to take the depositions of the expert witnesses, they cannot now avoid their obligation to pay the witness fees.

A court may impose discovery costs under Rule 26(b)(4)(C) after the trial has been concluded. In *Chambers v. Ingram,* 858 F.2d 351, 360–61 (7th Cir.1988), the Court of Appeals held that an expert witness fee due under Rule 26(b)(4)(C) could be imposed as a cost pursuant to Federal Rule of Civil Procedure 54(d). Therefore, the sum of $4,839.10 will be assessed as costs against the Sampsons.

*Motion to Tax Costs*

Orkin has filed a Bill of Costs requesting compensation as follows:

Fees of the Court Reporter for all or any part of the
    transcript necessarily obtained for use in the case ...$14,308.30
    Costs incident to taking of depositions ........................$11,669.99
          TOTAL                $25,978.29

The Sampsons again argue that it would be inequitable to impose costs due to their financial condition and the undisputed fact that Orkin improperly applied the Orkil 2X. In the alternative, the Sampsons contest the amount of the costs.

■ Federal Rule of Civil Procedure 54(d) provides for an award of costs in favor of the party who prevails in the litigation. Absent a showing of misconduct on the part of the prevailing party, or indigency on the part of the losing party, costs must be awarded by the trial court. *See generally Smith v. DeBartoli*, 769 F.2d 451, 453 (7th Cir.1985); *Morris v. Spratt*, 768 F.2d 879, 884 (7th Cir.1985); *Burroughs v. Hills*, 741 F.2d 1525, 1533 (7th Cir.1984); *Badillo v. Central Steel and Wire Company*, 717 F.2d 1160, 1165 (7th Cir.1983); and *Roberts v. Homelite Division of Textron, Inc.*, 117 F.R.D. 637, 638 (N.D.Ind.1987).

28 U.S.C. § 1920 enumerates the costs which may be recovered:

A judge or clerk of any court of the United States may tax as costs the following:

(1) Fees of the clerk and marshal;

(2) Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case;

(3) Fees and disbursements for printing and witnesses;

(4) Fees for exemplification and copies of papers necessarily obtained for use in the case;

    \*    \*    \*    \*    \*    \*

A bill of costs shall be filed in the case and, upon allowance, included in the judgment or decree.

In *State of Illinois v. Sangamo Construction Company*, 657 F.2d 855 (7th Cir.1981), the court discussed the allowance of costs and stated:

Rule 54(d) of the Federal Rules of Civil Procedure grants the district court, in the absence of other statutory authority, discretionary authority to award costs to the prevailing party. But not all expenses incurred by a party in connection with a lawsuit constitute recoverable costs. Indeed, major expenses such as attorneys fees, investigatory services, and most travel and subsistence expenses generally are not recoverable "costs". Courts are to award, except in limited exceptional situations, only those expenses specifically recognized by statute. (footnotes and citations omitted) 657 F.2d at 864

■ As previously discussed, it was undisputed that Orkin improperly applied the Orkil 2X to the exterior walls of the Sampson home and the surface area around the snake nest. The Sampsons contend that this improper conduct should preclude Orkin from recovering its costs. However, there was no evidence that Orkin acted in bad faith. Wanda contacted Orkin with a novel problem: a nest of garden snakes. The Orkin employees discussed and researched the problem and determined that the chlordane contained in Orkil 2X would kill the snakes. After it was determined that the Orkil 2X had been applied improperly, Orkin attempted to resolve the problem with the Sampsons. Additionally, due to the previous mental and physical problems experienced by Wanda, a bona fide dispute existed as to whether the chlordane caused the symptoms which she began experiencing in the spring of 1983. Therefore, the conduct of Orkin does not relieve the plaintiffs of their liability for costs.

■ The Sampsons next contend that their financial condition precludes an award of costs. As previously discussed, the Sampsons already have spent $44,000.00 for trial expenses and owe an additional $25,000.00 in expenses. However, the fact that the Sampsons voluntarily chose to invest all of their assets in the preparation of this case does not relieve them of the responsibility for the remaining costs.

The fees requested by Orkin fall into three general categories. Orkin is requesting $5,575.30 for deposition transcripts, $11,669.99 for expert witness fees incurred during depositions, and $8,733.00 for a "court transcript." In the Memorandum in Support of Defendant's Bill of Costs filed on December 31, 1987, Orkin extensively addressed the plaintiffs' claim that no costs

should be awarded. Orkin then stated that if the Court did not grant its Bill of Costs in its entirety, "the Court should make a determination as to how much of the Bill of Costs is in fact taxable." (Memorandum, p. 15) It should be noted that Orkin, not this Court, has the burden of justifying the costs.

■ Orkin's claim for deposition transcripts will be allowed. Under Section 1920(2), a party may recover the court reporter expenses incurred during a deposition if the deposition was reasonably necessary for the presentation of the case. In *Hudson v. Nabisco Brands, Inc.*, 758 F.2d 1237 (7th Cir.1985) the Court held that a party may recover deposition expenses as costs even if the deposition was not used at trial:

[T]he generally accepted view, and the one adopted by this circuit, is that introduction of a deposition at trial is not a prerequisite for finding that it was necessary to take the deposition. 758 F.2d at 1243

*See generally Wahl v. Carrier Manufacturing Company, Inc.*, 511 F.2d 209, 217 (7th Cir.1975); *Roberts*, 117 F.R.D. at 639; *McHenry v. Joseph T. Ryerson Company*, 104 F.R.D. 478, 481 (N.D.Ind.1985); and *Zdunek v. Washington Metropolitan Area Transit Authority*, 100 F.R.D. 689, 694 (D.C.1983).

After having observed the trial, the trial court is in the best position to determine whether the depositions were reasonably necessary for both the pretrial preparation and the trial itself. The instant case involved complicated issues concerning a claim of chemical poisoning. Wanda claimed serious and permanent injuries, and if she would have prevailed at trial, the jury undoubtedly would have awarded a substantial monetary verdict. Therefore, both parties were required to invest a substantial amount of time and effort in the preparation of this case. Given the nature and complexity of the case, the number of depositions taken clearly was not excessive. Therefore, the deposition costs in the amount of $5,575.30 are allowed.

■ Orkin also has requested $11,669.99 as reimbursements for the expert witness fees paid to take the depositions of the plaintiffs' trial experts. Although Rule 26(b)(4)(C) required Orkin to pay the expert witness fees for taking the deposition, it does not address the issue of whether that expense can be recovered as a cost. In *Crawford Fitting Company v. J.T. Gibbons, Inc.*, 482 U.S. 437, 107 S.Ct. 2494, 2499, 96 L.Ed.2d 385 (1987), the Supreme Court held that the witness fees paid to an expert who testified at trial could not be recoverable as a cost under Rule 54(d) and Section 1920. Therefore, the request for the deposition witness fees in the amount of $11,669.99 is disallowed.

■ Finally, Orkin has requested $8,733.00 for a court transcript. Orkin has not specified whether that expense involves daily copy or whether the transcript was ordered after the trial. It is within the discretion of the trial court to tax costs for a daily transcript. *Farmer v. Arabian American Oil Company*, 379 U.S. 227, 234, 85 S.Ct. 411, 416, 13 L.Ed.2d 248, 253–54 (1964); *Wahl*, 511 F.2d at 217; and *Roberts*, 117 F.R.D. at 640.

Although the trial involved some complex issues, all of the witnesses were deposed prior to trial. Additionally, two attorneys represented Orkin during the course of the trial. Therefore, Orkin has failed to demonstrate that a daily transcript was reasonably necessary for the presentation of the case. The request for costs in the amount of $8,733.00 is disallowed.

---

For the foregoing reasons, the Motion Requesting Plaintiffs to Pay for Expenses is GRANTED IN PART. Costs in the amount of $4,839.10 are assessed against the plaintiffs, Roger A. Sampson and Wanda Sampson. The Motion to Tax Costs also is GRANTED IN PART. Costs in the amount of $5,575.30 also are assessed the plaintiffs, Roger A. Sampson and Wanda Sampson. The Clerk is ORDERED to tax costs in the total amount of $10,414.40.