599 F.2d 178
 50 A.L.R.Fed. 466
 SCA SERVICES, INC., Plaintiff and Counterdefendant-Appellant
and Cross-Appellee,
v.
LUCKY STORES, Defendant and Counterclaimant-Appellee,
v.
SCA SERVICES, INC., Third-Party Plaintiff and
Counterdefendant-Appellant and Cross-Appellee,
v.
GENERAL MILL SUPPLY COMPANY, Third-Party Defendant and
Counterclaimant-Appellee and Cross-Appellant.
 Nos. 78-1266, 78-1267.
 United States Court of Appeals,
Seventh Circuit.
 Argued Feb. 26, 1979.
Decided May 18, 1979.
 
 James C. Donnelly, Jr., Boston, Mass., for plaintiff and counterdefendant-appellant and cross-appellee.
 Brian G. Shannon, Detroit, Mich., for defendant and counterclaimant-appellee.
 Before FAIRCHILD, Chief Judge, and SPRECHER and TONE, Circuit Judges.
 TONE, Circuit Judge.
 
 
 1
 This opinion deals with the allowability to the prevailing party of interest on a judgment and the cost of copies of depositions.
 
 
 2
 SCA Services, Inc. entered into a contract with Lucky Stores, which operates more than one hundred supermarkets in various Midwestern states, to purchase used cardboard from Lucky's supermarkets. The contract also obligated SCA to install machines to bale the cardboard at the supermarkets. SCA also entered into a contract with General Mill Supply Company in which it was agreed that General Mill, acting as broker, would sell to paper mills all the cardboard SCA bought from Lucky. Disputes among the parties concerning the quality of the cardboard and whether SCA was including in its shipments cardboard from stores other than Lucky's were aggravated by the falling market price of the cardboard. Unable to settle their differences, SCA and Lucky terminated their relationship, and SCA stopped picking up Lucky's cardboard on April 30, 1975. General Mill continued to act as broker in the sale of other cardboard for SCA until July 1975.
 
 
 3
 SCA sued Lucky in the United States District Court for the Eastern District of Virginia for breach of their contract. Lucky then sued SCA on the same contract in the Southern District of Illinois. The district court in Virginia transferred its case to the Southern District of Illinois, where the cases were consolidated, with SCA as the plaintiff-counterdefendant and Lucky as the defendant-counterclaimant. SCA then filed a third-party complaint against General Mill, alleging a breach of contract and, further, that if Lucky prevailed against SCA, General Mill should be liable to SCA for the damages because SCA relied on General Mill's representations as to the quality of the cardboard in terminating the Lucky contract. General Mill responded with a counterclaim against SCA, asserting in Count I that SCA breached the contract with General Mill described above by failing to continue to supply paper to be sold by General Mill, and asserting in three other counts breaches of other contracts between the parties. The court stayed proceedings on the latter three counts pending arbitration and eventually dismissed them without prejudice.
 
 
 4
 After a trial of the remaining issues before a jury, the court entered judgment on the verdicts as follows: Lucky was found liable to SCA for the unpaid balance due on the baling machines in the amount of $433,339.21. SCA was found liable to Lucky for breach of contract in the amount of $220,776. SCA was also found liable to General Mill in the amount of $82,000. The court also denied General Mill's motion for interest from the date its counterclaim was filed and refused to include deposition expenses in the award of costs.
 
 
 5
 SCA settled with Lucky and appeals from the judgment in favor of General Mill, which cross appeals from the rulings on interest and costs. This opinion addresses only the issues raised by General Mill's cross-appeal. They are (1) whether General Mill was entitled to interest on its judgment in accordance with Michigan law in view of the provision in the contract that Michigan law would govern the rights and liabilities of the contracting parties, and (2) whether the district court abused its discretion by excluding from the award of costs the entire expense of deposition copies claimed by General Mill. The portion of our decision dealing with the questions presented by the appeal of SCA does not meet the criteria for publication stated in Circuit Rule 35 and is therefore filed as an unpublished order.
 
 1. Interest
 
 6
 Included among the laws of the state in which the district court sits that Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), makes applicable in diversity cases are the state's conflict of laws rules. Klaxon Co. v. Stentor Electric Mfg. Co., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). The district court in the case at bar was therefore required to apply the conflict rules of Illinois.
 
 
 7
 The contract between SCA and General Mill contained the following choice of law provision:
 
 
 8
 All questions with respect to the construction of this Agreement and the rights and liabilities of the parties hereunder shall be determined in accordance with the provisions of the laws of the State of Michigan.
 
 
 9
 The term "liabilities" includes the measure of recovery in the event of breach. Interest is a part of the measure of recovery. See Restatement (Second) of Conflict of Laws § 207 & Comment E (1971). Illinois courts give effect to choice of law clauses. E. g., Hofeld v. Nationwide Life Ins. Co., 59 Ill.2d 522, 529, 322 N.E.2d 454, 458 (1975). See Restatement, supra, §§ 186, 187, and 207. Consequently, Michigan law applies. Under Mich. Comp. Laws § 600.6013, Mich.Stat.Ann. § 27A.6013 (Callaghan 1977), General Mill was entitled to interest in the amount of 6% per year, calculated from March 22, 1976, the date General Mill filed its counterclaim against SCA.
 
 2. Deposition Copies
 
 10
 Fed.R.Civ.P. 54(d) and 28 U.S.C. § 1920 give the district court discretion in determining whether expenses claimed by the prevailing party are taxable as costs against the losing party, but this discretion is not unfettered. Popeil Brothers, Inc. v. Schick Electric, Inc., 516 F.2d 772, 774 (7th Cir. 1975). General Mill requested reimbursement in the amount of $10,640.42, which included both the costs of transcribing the depositions taken by General Mill and the cost of copies of transcripts of depositions taken by SCA and Lucky. The district court excluded all deposition expenses from the costs assessed against SCA.
 
 
 11
 " The charges of the court reporter for transcripts . . . of depositions reasonably necessary for use in the case even though not used at trial are recoverable upon a proper showing as provided in 28 U.S.C. § 1924." Wahl v. Carrier Mfg. Co., 511 F.2d 209, 217 (7th Cir. 1975); 6 Moore's Federal Practice, P 54.77(4), at 1720 (2d ed. 1976). The expense of discovery depositions which meet this test are recoverable as costs. Bailey v. Meister Brau, Inc., 535 F.2d 982, 996 (7th Cir. 1976).
 
 
 12
 Disallowance of General Mill's deposition costs in their entirety was not justified. It is apparent from our sampling of parts of the depositions taken by General Mill that at least some of those parts were reasonably necessary for use in the case. The fact that General Mill did not use them as evidence at trial is not controlling.
 
 
 13
 Courts have reached differing results on the appropriateness of awarding costs for copies of depositions. In a number of district court cases such costs have been refused, and, largely on the authority of these cases, Professor Moore states that costs for deposition copies are generally not allowable.[1] See 6 Moore's Federal Practice, supra, P 54.77(4), at 1724 & n. 21, and 1978-79 Supp. 56. We are persuaded, however, that the Fifth Circuit was correct in United States v. Kolesar, 313 F.2d 835, 838-840 (5th Cir. 1965), which held the cost of copies to be allowable. Attorneys' offices are often distant from the courthouse where the original transcript of the deposition is filed; but, even if they are not, the practicalities of preparing a case for trial often require that the attorneys have frequent and ready access to the depositions, and that they be able to mark annotations and cross-references on the pages. The expense of deposition copies reasonably necessary for use in the case may be included in the award of costs. Id.; Independent Iron Works, Inc. v. United States Steel Corp., 322 F.2d 656, 678-679 (9th Cir. 1963). This applies to copies of both an opponent's and the prevailing party's own depositions. E. g., Independent Iron Works, supra,322 F.2d at 678-679.
 
 
 14
 Omission of all deposition expenses from the award of costs was an abuse of discretion. We appreciate the difficulty of the task confronting the district court in attempting to determine what parts of the voluminous depositions were reasonably necessary for use in the case. On remand, the court may award General Mill one-half of its claimed deposition expenses, $5,320.21, as costs in addition to costs already awarded, on condition that, if either party is not satisfied with this allocation, the court will refer the matter to a master for a hearing on the question of costs and conduct such further proceedings as may be necessary.
 
 
 15
 The judgment on the merits is affirmed for the reasons stated in the unpublished order referred to above. With respect to interest and costs, the case is remanded to the district court for further proceedings in conformity with this opinion.
 
 
 
 [1]
 The only Court of Appeals decisions Professor Moore refers to as disallowing the awarding of costs of the expense of deposition copies are Fireman's Fund Ins. Co. v. Standard Oil Co., 339 F.2d 148 (9th Cir. 1964), and United States v. Portland Cement Co., 338 F.2d 798 (10th Cir. 1964). Both cases involved special circumstances and are distinguishable from the case at bar. The Ninth Circuit distinguished Fireman's Fund Ins. Co. from cases in which the expense of copies was allowed as costs, including its own decision in Independent Iron Works, Inc. v. United States Steel Corp., 322 F.2d 656, 678-679 (9th Cir. 1963), solely because it was an admiralty case to which "ordinary rules of Civil Procedure" did not apply. 339 F.2d at 160-161. Portland Cement Co. involved costs against the United States which are allowable only to the extent permitted by law; the Tenth Circuit held that the governing statute, 28 U.S.C. § 2412(b), did not encompass the cost of deposition copies. 338 F.2d at 803 & n. 22