**INGERSOLL MILLING MACHINE COMPANY, Plaintiff/Counter-Defendant,**

v.

**OTIS ELEVATOR COMPANY, Defendant/Counter-Plaintiff.**

No. 78 C 681.

United States District Court, N. D. Illinois.

Feb. 24, 1981.

Samuel Weisbard and John T. Schriver, McDermott, Will & Emery, Chicago, Ill., for plaintiff.

Matthew E. Murray, Gerald D. Skoning, Andrew R. Laidlaw, Seyfarth, Shaw, Fairweather & Geraldson, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

On December 31, 1980, following an extended bench trial, this Court entered its Findings of Fact and Conclusions of Law, ruling in favor of Ingersoll Milling Machine Company ("Ingersoll") on both its $33,400 claim against Otis Elevator Company ("Otis") and Otis' approximately $2.4 million counterclaim (which was of course the major reason for the hard-fought nature of the suit). Another dispute has erupted over Ingersoll's bill of costs. For the reasons stated in this memorandum opinion and order, Otis' objections to the bill of costs are sustained in part and overruled in part.

### 1. Court Reporter's Fees

■ Only two transcripts during the three-week trial are the subject of this request for reimbursement of $387.50. J. Douglas Logan was an early and key witness, because he was the Otis executive who negotiated and entered into the disputed contract. Review of his testimony was plainly significant for the remaining trial strategy and, in the language of 28 U.S.C. § 1920(2), "necessarily obtained for use in the case." That same conclusion also applies to the transcribing of final argument of Otis' counsel. Though both parties had tendered proposed findings and conclusions before trial, this Court asked for and received revisions to those proposals at the conclusion of trial. Writing up of final argument was useful for that purpose, even though review of that write-up apparently confirmed for Ingersoll most of its pre-trial submission, and the statutory language applies to that transcript as well. Accordingly this item is allowed in its entirety.

### 2. Witness Fees

■ (a) Expert witness Elliot Breese was an important witness to deal with the special problems and the parties' relative responsibilities in connection with tailor-made special machining systems like that involved in this case (see for example Findings 17(d), 18(c) and 20). Breese also provided valuable testimony regarding the specific claimed defects in the machining system. It is clear that the contractually agreed upon fees Ingersoll actually paid Mr. Breese are not taxable as costs. *Adams v.*

*Carlson*, 521 F.2d 168, 172 (7th Cir. 1975). However, given the change in the nature of expert testimony under Fed.R.Evid. 703 (so that presence at the entire trial is useful for the expression of the expert's opinion), Mr. Breese's usefulness as an expert consultant throughout the trial, and the obvious possibility that Mr. Breese might be needed for rebuttal testimony as well, this Court allows compensation of *regular* witness fees for the full 12 days sought by Mr. Breese under 28 U.S.C. § 1821.

 (b) As to witness fees in connection with witnesses produced at trial, the only specific objection by Ingersoll is to a $363 mileage request for transportation expense of Dennis Carlson, an Ingersoll employee. This is a discretionary matter under *Popeil Bros., Inc. v. Schick Electric, Inc.*, 516 F.2d 772, 777 (7th Cir. 1975); and such cases as *Electronic Specialty Co. v. International Control Corp.*, 47 F.R.D. 158, 161–62 (S.D.N.Y.1969) are ample authority for the allowance of this item. Mr. Carlson had to be brought in from a distant location where he was on assignment in connection with Ingersoll's business. Otis' objection in that respect is overruled. However, the claimed excess subsistence reimbursements for John McCombie and Roy Larson (that is, the amounts in excess of the $50 per diem figure under 5 U.S.C. § 5702(a), made the limit of recovery under 28 U.S.C. § 1821(d)(2)), are disallowed.

 (c) Witness fees incurred in connection with the taking of depositions are clearly recoverable under 28 U.S.C. § 1920, and no question of excess claims is involved here. Otis' objection is overruled.

### 3. Costs Incident to Taking Depositions

 Ingersoll requests taxation of $5,170.20 as the cost of depositions, relying on our Court of Appeals' decision in *SCA Services, Inc. v. Lucky Stores*, 599 F.2d 178, 180–81 (7th Cir. 1979). Otis counters only by reference to the opinion in *United States v. Kolesar*, 313 F.2d 835, 838–40 (5th Cir.

1965), relied upon in part in the *SCA Services* opinion. However, *Kolesar* was there cited only for the proposition that costs of *copies* of depositions are allowable, and not to negate the general proposition that recovery may be had for depositions "reasonably necessary for use in the case even though not used at trial." *SCA Services*, 599 F.2d at 180, quoting *Wahl v. Carrier Mfg. Co.*, 511 F.2d 209, 217 (7th Cir. 1975). There has been no showing by Otis that any of the depositions fail to meet the "reasonably necessary for use" test, and Otis' objection in this respect is accordingly overruled.

### 4. Ingersoll's Model of the Machinery

 Ingersoll seeks reimbursement of its *actual cost* of labor and material in constructing a scale model of the complex multi-stage machine at issue in this litigation. Because that cost came to $11,404.26 and no advance approval was obtained from this Court, Otis characterizes the request as an "outrageous item." That claim on Otis' part comes with ill grace, for there is no question that the model was indispensable to *both* parties' presentation of their respective cases and to the Court's understanding of the operation of the machine and the numerous areas of dispute between the parties. To have conducted the trial without the model would have presented some of the same problems as describing, to someone untrained in mathematics, a conical helix without using one's hands.\* Though *Wahl v. Carrier Manufacturing Co., Inc.*, 511 F.2d 209, 217 (7th Cir. 1975), states that it would ordinarily be best to obtain prior approval from the district court, the very statement of the proposition in that form confirms that allowance *may* be made *without* prior approval (see also 6 Moore's Federal Practice ¶ 54.77[6], at 1739–41 (2 ed. 1976)). If Ingersoll had in fact sought such advance approval, there is no question that this Court would have granted it. As did the courts in *Esler v. Safeway Stores, Inc.*, 77 F.R.D. 479, 483 (W.D.Mo.1978) and *De-*

---

\* On second thought, given the possibility of simply referring to the thread of a tapered screw, this simile may be inapt. Suffice it to say that the model was invaluable during trial.

*Thomas v. Delta S.S. Lines, Inc.*, 58 F.R.D. 335 (D.P.R.1973), this Court allows reimbursement for the model and overrules Otis' objection.

5. *Additional Subsistence Costs*

 "Additional subsistence" of $1,680.11 is sought by Ingersoll without any support other than the assertion of general equitable principles. Consistently with the Supreme Court's direction that "the discretion given district judges to tax costs should be sparingly exercised with reference to expenses not specifically allowed by statute," *Farmer v. Arabian American Oil Co.*, 379 U.S. 227, 235, 85 S.Ct. 411, 416, 13 L.Ed.2d 248 (1964), the Court sustains Otis' objection to this item.

*Conclusion*

To avoid any misunderstanding as to the specific amount allowable, Ingersoll is directed to file an amended bill of costs in conformity with this memorandum opinion and order on or before March 6, 1981.