Paul DOPP, Plaintiff,

v.

HTP CORPORATION, Island Resorts
Holding, S.A., Jay Pritzker, Richard
L. Schulze, Defendants.

Civ. No. 88–1420 (JP).

United States District Court,
D. Puerto Rico.

Jan. 8, 1991.

Rubén T. Nigaglioni, Ledesma, Palou & Miranda, Hato Rey, Puerto Rico, for plaintiff.

Héctor Reichard de Cardona, San Juan, Puerto Rico, Juan E. Rodríguez Díaz, Hato Rey, Puerto Rico, for defendants.

Héctor Meléndez Cano, Trías, Doval, Muñoz, Acevedo & Otero, San Juan, Puerto Rico, for Island Resorts.

## OPINION AND ORDER

PIERAS, District Judge.

The Court has before it plaintiff's and defendant Island Resorts Holdings' Motions to Amend the Judgment and Plaintiff's Request for Costs and Attorney's Fees. Defendant Jay Pritzker has opposed these motions.

This case involves a series of financial transactions which transpired between plaintiff Dopp and codefendants. On May 9, 1984, plaintiff, acting through Code Hospitality Group ("Code"), his wholly owned corporation, executed an option contract with North Coast Investment Corporation (the "Purchase Agreement") for the purchase of the stock or all of the assets of the Dorado Beach Hotel Corporation, owner of Dorado and Cerromar Beach Hotels in Puerto Rico. After various negotiations and several amendments to the original contract, the purchase of the stock of Dorado Beach Hotel Corporation occurred on December 4, 1984.

During the evening of December 2, 1984, and into the early morning hours of December 3, 1984, plaintiff Dopp, codefendant Richard Schulze, Brian Fix on behalf of Island Resorts Holding, S.A. (plaintiff's partner in this transaction), and their respective advisors met to review, negotiate and finalize a Stock Subscription Agreement and an Agreement regarding the Dorado Beach Hotel Corporation. (Tr. 1352—Pretrial stipulation.) On December 3, 1984, plaintiff executed the Stock Subscription

Agreement ("SSA"). *See* Plaintiff's Exhibit 6. The SSA, entered into by HTP Corporation, New Horizons, Inc., Code, and Island Resorts Holding, S.A., provided for the subscription, issuance, and holding of the shares of stock in HTP Corporation, the entity which would purchase the stock of the Dorado Beach Hotel Corporation. The Stock Subscription Agreement contained several agreements among the parties, including clause 6(b), giving HTP Corporation an option to purchase the twenty percent minority interest (twelve percent held by Dopp, eight percent held by Island Resorts) for $1,000,000.00 within ten years.[1]

Also, on December 3, 1984, the plaintiff, through Code, entered into the "Agreement Regarding Dorado Beach Hotel Corporation," in which Code assigned the rights to the Purchase Agreement to HTP Corporation, upon certain terms and conditions. *See* Plaintiff's Exhibit 7. This agreement basically provided that Code would transfer, assign and convey to HTP, and HTP would accept the assignment of the Purchase Agreement, provided Code would, upon closing, receive its deposit. HTP agreed to assume all of Code's liabilities and obligations as Purchaser under the Purchase Agreement and further agreed that it would cause Dorado Beach Hotel Corporation to pay Code and Island Resorts $200,000.00 in specified installments, as a fee for their services related to the transaction.

As previously stated, the purchase of all of the stock of the Dorado Beach Hotel Corporation occurred on December 4, 1984. In the Agreement of Purchase and Sale of the Dorado Beach Hotel Corp., HTP purchased all the shares of stock in the Dorado Beach Hotel Corp. from North Coast Investment, a company which was wholly owned by Teacher's Insurance and Annuity Association of America and Connecticut General Life Insurance Company.

The case went to trial on March 12, 1990, and during the trial, Dopp contended that he entered into the SSA under duress and deceit, and that the terms of the written SSA, specifically the imposition of the option clause, breached an oral contract he had previously entered into with Jay Pritzker on November 30, 1984. On March, 23, 1990, the jury returned a verdict in favor of plaintiff, finding that the plaintiff entered into the SSA due to deceit or duress. It further concluded that an oral agreement existed between Jay Pritzker and plaintiff on November 30, 1984, and that the oral contract had been breached. The jury found Jay Pritzker liable to the plaintiff in the amount of $2,000,000.00. The special verdict form with the jury's answers is set out in the margin below.[2]

---

**1.** The clause states that "[a]t any time and from time to time hereof, the Principal Subscriber may elect to purchase all (but not less than all) of the shares owned by the Minority Subscribers or any Minority Subscriber by delivering to such persons notification of its exercise of the option herein provided and by delivering simultaneously with such notice a purchase price for such Shares of $1,000,000...or if the option is exercised with respect to fewer than all of the Minority Subscribers, then payable at the rate of $50,000 per Share purchased upon exercise of such option, subject to appropriate antidilution adjustment. Such option shall expire of [sic] the end of such ten (10) day period." *See* SSA, clause 6(b) at 12–13.

**2.** Special Verdict Form

1. Do you find that plaintiff has proven that he entered into the Stock Subscription Agreement due to deceit ("dolo") or duress?

    YES      X                                 NO           

2. If your answer to question one (1) is NO, then you need not answer any of the other questions on this verdict form. The foreperson will sign and date the verdict form.

3. If your answer to question one (1) was YES, do you find that after the contract was signed, the plaintiff knowingly confirmed the Stock Subscription Agreement at a time when he was not under deceit or duress?

    YES                                     NO      X    

Plaintiff and Island Resorts now request that this Judgment be amended so that the Stock Subscription Agreement be annulled, the November 30, 1984, oral agreement be resolved, and the parties be restored to the positions they were in prior to the entering into any agreements with the defendants. Defendant Jay Pritzker has opposed this request.

## I. THE WRITTEN STOCK SUBSCRIPTION AGREEMENT

Under the Civil Code of Puerto Rico, "... intimidation shall *annul* the obligation, even if it should have been employed by a third person who did not take part in the contract." 31 L.P.R.A. § 3407 (emphasis supplied). In addition, "[i]n order that deceit may give rise to the *nullity* of a contract, it must be serious, and must not have been employed by both of the contracting parties. Incidental deceit render the party who employed it liable to indemnify for losses and damages only." 31 L.P.R.A. § 3409 (emphasis supplied). Chapter 263 of the Civil Code of Puerto Rico, 31 L.P.R.A. § 3511, *et seq.*, sets forth the framework for actions for nullity. A contract may be annulled when it "contain[s] any of the defects which invalidate [it] ... according to law." Article 1252, 31 L.P.R.A. § 3511. When an obligation has been declared null, the contracting parties

4. If your answer to question three (3) was YES, then you need not answer any of the other questions on this verdict form.

5. If your answer to question three (3) was NO, do you find that an oral agreement existed between Jay Pritzker and the plaintiff on November 30, 1984?

YES     X               NO  _____

6. If your answer to question five (5) was NO, then you need not answer any further questions on this verdict form.

7. If your answer to question five (5) was YES, do you find that the oral agreement was breached?

YES     X               NO  _____

8. If your answer to question seven (7) was NO, you need not answer any further questions. If you find that the oral contract was breached, what amount of damages did the plaintiff suffer as a result of the breach?

$ 2,000,000.00

Also state which defendants are liable.
      Defendant

a) HTP Corporation  _____

b) Jay Pritzker      $2,000,000

c) Richard Schulze  _____

In San Juan, Puerto Rico, this  23  day of March, 1990.

10:35  _____            RAFAEL FUSTER

Time                         Foreperson's Signature

shall "restore to each other the things which have been the object of the contract with their fruits, and the value with its interest...." 31 L.P.R.A. § 3514.

In the charge to the jury, the Court instructed the jury that in order for deceit to give rise to the annulment of the contract, "it must be serious and must not have been employed by both of the contracting parties ... Serious deceit is deceit without the existence of which the parties would not have entered into a contract." (Tr. 1357.) The jury's instruction on intimidation ("intimidación") [3] stated that "[i]ntimidation or duress exists when one of the contracting parties is instilled with a reasonable and well-grounded fear of suffering an imminent and serious injury to his person or property ... In order for intimidation to be a cause to annul the contract, the fear or threat has to be of great and imminent damages, be the direct cause of the consent, and be of an illegal nature." *Id.* (Tr. 1359.)

■ The jury found that the December 3, 1984, SSA was entered into because of "deceit or duress." *See* Special Verdict Form Question 1. Although defendant Pritzker claims it is unclear whether the jury found incidental deceit, which entitles plaintiff to damages only, or serious deceit, which has the effect of annulling the contract, we conclude that the jury's finding of "deceit or duress" could not include a finding of incidental deceit. After the jury began to deliberate, it presented the following question to the Court: "[C]an there be damages and liability if we find deceit or duress but not breach of contract? Special Verdict Form precludes such a possibility."

(Tr. 1372.) The Court responded to the jury's question by restating its instruction on serious and incidental deceit, and adding that if the jury found damages from incidental deceit without breach of the oral contract, these damages could be written in longhand on the verdict form.[4] When the jury returned its verdict, it did not write in any damages and therefore found no incidental deceit.

Because the jury concluded that plaintiff entered into the SSA due to serious deceit or duress, the SSA contract must be declared null as to the plaintiff, since the Code provides that "intimidation shall annul the obligation ... [,]" 31 L.P.R.A. § 3407, and deceit giving rise to the nullity of a contract "must be serious...." 31 L.P.R.A. § 3409.

■ Codefendant Pritzker argues that because he was not a contracting party to the SSA, and he was the only party found liable by the jury, *see* Special Verdict Form Question 8, the plaintiff is not entitled to have the SSA annulled. We disagree. As explained above, the jury found that the plaintiff entered into the contract due to duress (intimidation) or serious deceit. According to the Civil Code, violence or intimidation "shall annul the obligation, even if it should have been employed by a third person who did not take part in the contract." 31 L.P.R.A. § 3408 (1968). *See also* J. Vélez Torres, *Los Contratos* 74 (1986) (hereinafter Vélez Torres). Thus, even if Pritzker were considered a third party unrelated to the SSA, the jury's finding of duress is sufficient to annul the SSA.

---

3. We use the terms duress and intimidation interchangeably.

4. The additional instruction reads as follows: There is deceit when by words or insidious machinations on the part of one of the contracting parties the other is induced to execute a contract which without them he would not have made. In order to find that a contracting party has employed deceit, you must find that the other party's consent was rendered voluntarily although induced fraudulently. In order for deceit to give rise to the annulment of the contract it must be serious and must not have been employed by both of the contracting parties. Incidental deceit renders the party who employed it liable to indemnify for losses and damages only. Serious deceit is deceit without the existence of which the parties would not have entered into a contract. Incidental deceit is present when the act merely facilitated the consummation of the contract. If you find damages from incidental deceit without the breach of contract, then you can write in longhand your verdict at the end of page 3 of the jury verdict form, and you will write "amount of damages to plaintiff."

Under the law of deceit, deceit is present when "by words or insidious machinations on the part of one of the *contracting parties* the other is induced to execute a contract...." 31 L.P.R.A. § 3408 (emphasis supplied). The Supreme Court of Puerto Rico and the commentators have interpreted this article to mean that if deceit is exercised by a person who is not a party to or *not acting in complicity with or with the consent of the party benefited from the contract,* the deceit cannot annul the contract. *Rivera v. Heirs of Díaz,* 70 P.R.R. 168, 173 (1949); Vélez Torres at 77 ("dolo" exercised by a third party does not have the effect of annulling the contract unless the beneficiary of the contract knows that the third party has exercised the dolo and has not objected to the fact; the same would occur if the contracting party benefiting from the dolo and the third party employing it are acting in common accord) (paraphrasing ours).[5] In comparing the common law concept of undue influence with the Civil Code concept of serious deceit ("insidious machinations"), the Supreme Court of Puerto Rico observed that if the deceit is exercised by a person not a party to the contract, or not acting with the consent or at least with the knowledge of the contracting party, without objection by the contracting party, the contract is valid. This doctrine rests on the theory that in such a case, the two contracting parties acted in good faith, and there is no reason to impose on one of them the consequences of the act of a third person whom the other party mistakenly trusted. *Id.*

In the instant case, Richard Schulze was the only person representing New Horizons and HTP on December 3, 1984, and he signed the SSA on behalf of these code-fendants as officer (Vice President). *See* Plaintiff's Exhibit 6 at 16. At the time, Mr. Schulze was Senior Vice President of Hyatt. (Tr. 737.) He had previously visited Puerto Rico and had spoken to the plaintiff and Héctor González about the acquisition of the hotel properties and the possibility of Hyatt managing the hotel properties. (Tr. 741–747, Pretrial Stipulation—Tr. 1350.) During his initial visit to Puerto Rico, Schulze had several conversations with codefendant Jay Pritzker, Chairman of the Board of Hyatt, and Tom Pritzker, President of Hyatt, "sharing with them what I'd learned and getting their advice and recommendations on how to deal with the issues as they arose ... look[ing] to the guidance of the senior corporate management in taking positions and suggesting what might or might not be possible." (Tr. 746–47.) On November 30, 1984, Schulze spoke with codefendant Jay Pritzker after Mr. Pritzker had spoken to the plaintiff, and Mr. Pritzker instructed him to travel back to Puerto Rico on November 30, 1984. (Tr. 749–750.) Thus, Mr. Schulze was in constant contact with Pritzker and was aware of Pritzker's conversation with the plaintiff on November 30, 1984, so that Pritzker is not a third party unrelated to the SSA. These codefendants were "acting in common accord" and the SSA can therefore be annulled on the basis of the jury's finding that Jay Pritzker was liable to the plaintiff.

In the ordinary case when the nullity of a contract is declared, the "parties shall restore to each other the things which have been the object of the contract...." 31 L.P.R.A. § 3514.[6] However, in this case, before the written SSA had been entered into, the plaintiff and Jay Pritzker entered into an oral agreement[7] which did not in-

---

**5.** The original Spanish version of Vélez Torres states:

El dolo producido por un tercero no tiene el efecto de anular la obligación o de exponer al beneficiado con el mismo a una acción de daños a menos que éste sepa que el tercero lo ha empleado y no oponga objeción al hecho; igual ocurriría si el beneficiado con el dolo y el tercero que lo emplea actúan de común acuerdo.

**6.** The plaintiff also contends that the Agreement Regarding the Dorado Beach Hotel Corporation should be annulled because it was entered into under the same circumstances as the SSA. We deny plaintiff's request as plaintiff's argument throughout the trial was that the imposition of the option clause *in the SSA* constituted "dolo" or "intimidación." Thus, the only contract plaintiff is entitled to annul is the SSA.

**7.** *See* Special Verdict Form Question 5.

clude any option clause. According to the terms of the oral contract, the "Pritzker interests would provide all the money for the deal and Mr. Dopp would be reimbursed for all the money he had incurred ... [and] the Pritzker interests would receive an eighty percent interest in the stock of the Corporation which would acquire the Dorado Beach Hotel Corporation stock and a long-term contract for managing the hotel ... [and] Dopp would receive a twenty percent interest in the stock of the corporation which would acquire the Dorado Beach Hotel Corporation stock." (Tr. 1354.)

## II. RESOLUTION OF THE NOVEMBER 30, 1984, ORAL AGREEMENT

■ Plaintiff has been awarded $2,000,-000.00 for the breach of the oral contract, and he now requests that the oral contract be resolved pursuant to Article 1077 of the Civil Code of Puerto Rico, 31 L.P.R.A. § 3052. He claims that he is entitled to have the breached November 30, 1984, contract resolved because a reciprocal obligation has been unfulfilled by the defendants. Defendant Pritzker argues that the plaintiff is not entitled to the resolution of the contract.

Article 1243 of the Civil Code states that any contract "specially determined by law" may be "rescinded." 31 L.P.R.A. § 3492. Article 1077 of the Puerto Rico Civil Code, 31 L.P.R.A. § 3052, provides that

The right to rescind the obligations is considered as implied in mutual ones, in case one of the obligated persons does not comply with what is incumbent upon him.

The person prejudiced may choose between exacting the fulfillment of the obligation or its rescission, with indemnity for damages and payment of interest in either case. He may also demand the rescission, even after having requested its fulfillment, should the latter appear impossible.

The Court shall order the rescission demanded, unless there are sufficient causes authorizing it to fix a period....[8]

The effect of a resultory action is similar to the effect of an annulment, in that the "rescission obliges the return of the things which were the objects of the contract, with their fruits and the price with interest; therefore it can only be carried into effect when the person who may have claimed it can return that which, on his part, he is bound to do ... Neither shall rescission take place when the things which are the object of the contract are legally in the possession of third persons who have not acted in bad faith. In such case the case the indemnity for damages may be claimed from the person who caused the lesion." 31 L.P.R.A. § 3496.

■ In order to maintain an exercisable right to resolve the contract, the unfulfilled obligation which is not complied with must be of "a reciprocal character." *Municipality of Ponce v. Vidal*, 65 P.R.R. 346, 351 (1945). The Civil Code provides no definition of reciprocal obligation giving rise to a resolutory action, although the commentators and the courts have discussed the concept extensively. Vélez Torres has stated that when both of the contracting parties remain obligated by means of the origin of the legal relationship between them, it is said that there are reciprocal relations ("relaciones reciprocas") because the obligation

---

**8.** The Spanish version of Article 1077 reads:

La facultad de resolver las obligaciones se entiende implicita en las reciprocas, para el caso de que uno de los obligados no cumpliere lo que le incumbe.

El perjudicado podrá escoger entre exigir el cumplimiento o la resolución de la obligación, con el resarcimiento de daños y abono de intereses en ambos casos. También podrá pedir la resolución, aun después de haber optado por el cumplimiento, cuando éste resultare imposible.

El tribunal decretará la resolución que se reclame, a no haber causas justificadas que le autoricen para señalar plazo....

As the plaintiff has noted, the English version of Article 1077 uses "rescind", while the Spanish statute uses "resolución." Because the Spanish version prevails, 31 L.P.R.A. § 13 (1968), we accept plaintiff's use of the English term "resolve." *See also Municipality of Ponce v. Vidal*, 65 P.R.R. 346, 351 n. 3 (1945) ("in so far as § 1077 of the Civil Code is concerned, the correct denomination of the action is resolutory, the use of either term [rescissory or resultory] is of no consequence.").

of one is derived from the obligation of the other; in order to be considered a motive for resolution, the unfulfillment must be related to a principal, reciprocal obligation.[9] IV J. Vélez Torres, *Curso de Derecho Civil*, 47, 52 (1981) (paraphrasing ours). Also, Velázquez has noted that synallagmatic (bilateral) contracts are those that create reciprocal obligations, and in such contracts, the reciprocal obligations of the parties are served mutually as consideration or the motive or reason for entering into the contract, and if one of the parties does not perform its obligation, the other party is not compelled to perform its (reciprocal) obligation.[10] G. Velázquez, *Las Obligaciones Según el Derecho Puertorriqueño* §§ 21, 23 (1964). *See also* II A. Blanco, *Curso de Obligaciones y Contratos* 332 (1980) (resolution is the consequence of the nonfulfillment of one of the contracting parties' reciprocal obligations).[11]

In addition, the Supreme Court of Puerto Rico has stated that in bilateral contracts, there are "obligations and correlative obligations" which are "so interdependent" that one is a consequence of the other; the performance of the obligation by a contracting party constitutes the motive of the contract for the other party, and vice versa. *Vidal*, 65 P.R.R. at 351. *See also Del Toro v. Blasini*, 96 P.R.R. 662, 669 (1968) (if one of the promises constituting the mutual consideration is not executed, the correlative obligation ceases to have consideration). Likewise, the Supreme Court of Spain, in discussing reciprocal obligations and Article 1.124 of the Spanish Code (the equivalent of Article 1077), has said that before it can be stated that reciprocal or bilateral obligations are involved, it is necessary not only that obligations or consideration ("prestaciones") from both parties exist in the same contract, but also that the obligation of one party should be correlative to the obligation of the other, and consequently, there should exist between the two parties a mutual undertaking. This "undertaking" produces a twofold result: first, in order for Article 1.124 of the Civil Code to apply, the condition of reciprocity must be so well established that one obligation cannot be conceived without the other. Second, Article 1.124 may not be applied to obligations which, even though incorporated as part of a unilateral of bilateral contract, have an accessory or complementary character in relation to those promises and correlative promises which constitute the main object of the contract. Decision of January 5, 1935, Supreme Court of Spain, 217 *Jurisprudencia Civil* 46 (citations omitted) (paraphrase of Supreme Court translation in *Vidal*, 65 P.R.R. at 355).[12]

**9.** The original Spanish text reads: "Cuando ambos contratantes quedan obligados mediante el nacimiento de la relación jurídica entre ellos, se dice que hay relaciones recíprocas porque la obligación de uno viene a ser la contrapartida de la obligación del otro ... Para que pueda considerarse motivo de resolución, el cumplimiento tiene que referirse a una obligación recíproca principal...."

**10.** The Spanish version reads "los contratos bilaterales o sinalagmáticos ... son aquellos que crean obligaciones recíprocas ... En los contratos sinalagmáticos, las obligaciones recíprocas de las partes se sirven mutuamente de causa ... De donde resulta especialmente: (a) que si una de las pártes no ejecuta su obligación, la otra no está obligada a ejecutar la suya ...; (b) que, además, ésta puede pedir la resolución del contrato (Art. 1077; 31 L.P.R.A. sec. 3052)...." G. Velázquez, *Las Obligaciones* §§ 21, 23 at 16.

**11.** The original Spanish version states "... la resolución es consecuencia del incumplimiento de alguna de las partes en un contrato sinalagmático perfecto productor de obligaciones recíprocas; incumplimiento que autoriza a la otra parte, siempre que haya cumplido a su vez lo que le incumbe, a pedir la resolución o el cumplimiento con abono de daños e intereses en ambos casos, según las palabras del Código...."

**12.** The original text states "Considerando que para que pueda hablarse de obligaciones bilaterales o recíprocas hace falta, no sólo que en un mismo contrato se establezcan prestaciones a cargo de ambas partes, sino que la obligación de cada una de ellas haya sido querida como equivalente de la de la otra, y, por consiguiente, exista entre ellas una mutua condicionalidad; de donde se desprende fácilmente esta doble consecuencia:

Primera. Que ... es necesario para la aplicación del art. 1.124 del Código Civil, que el principio de reciprocidad esté tan perfectamente caracterizado, que no se conciban unas obligaciones sin otras....

Segunda. Que no entra en juego dicho articulo cuando se trata de obligaciones que, estando

After careful consideration of plaintiff's argument, we conclude that the inclusion of the option clause in the written contract does not constitute the unfulfillment of a reciprocal obligation of the oral agreement as contemplated by Article 1077 of the Civil Code. In this case, the oral agreement between plaintiff and Pritzker provided that the Pritkzer interests would furnish all the money for the deal and Mr. Dopp would be reimbursed for all the costs he had incurred, the Pritzker interests would receive an eighty percent interest in the stock of the corporation which would acquire the Dorado Beach Hotel Corporation stock and a long-term contract for managing the hotel. Dopp would receive a twenty percent interest in the stock of the corporation which would acquire the Dorado Beach Hotel Corporation stock.[13] (Tr. 1354.) Thus, the reciprocal obligations or the consideration or motive for each of the parties to enter into the contract would be, for the plaintiff, the Pritzker interests furnishing the money for the deal and reimbursing plaintiff for the costs he had incurred, as plaintiff's receiving a twenty percent interest in the corporation acquiring Dorado Beach Hotel Corporation, and for the Pritkzer interests, receiving a majority (eighty percent) interest in the corporation acquiring Dorado Beach Hotel Corporation and the long-term contract for managing the hotel properties.

The plaintiff claims that one of his reasons or motives for entering into the oral contract, one of the "conditions of reciprocity" which could not be conceived without defendant Pritzker's obligations, was an undiluted twenty percent equity participation in the corporation which would own the Dorado and Cerromar hotels. He makes this assertion even though he "fully expected that there would be some reasonable option." (Tr. 116.) According to the plaintiff, the imposition of the option clause, which was expected by plaintiff, diluted the value of his participation and therefore gave rise to the unfulfillment of defendant's "reciprocal obligation" to give the plaintiff twenty percent participation.

We do not agree. As stated above, because the jury found that the Stock Subscription Agreement was entered into due to deceit or duress, it has been declared null as to plaintiff's interest. Plaintiff is essentially arguing that the valid November 30, 1984, agreement, which contains the twenty percent undiluted participation, should be resolved on the basis of a subsequent written contract which has been declared null. A subsequent written agreement which has been declared null cannot constitute the basis of an unfulfilled reciprocal obligation giving rise to the resolution of a valid, enforceable contract. Our thorough survey of the relevant case law, including plaintiff's cited cases, confirms this conclusion as it has not revealed any case of resolution which is factually similar to this case. For example, in *Ramírez Anglada v. Club Cala*, 89 J.T.S. 22 (1989), the plaintiff entered into a "guaranteed Vacation Membership Agreement" whereby he was assured the use of a "two Bedroom Den Villa" during a specific week for a period of twenty five years in exchange for $6,200.00. The contract also provided for a $200.00 annual dues for the first two years, subject to increases or decreases as necessary, in order to cover the costs of operating the club facilities and providing services incidental to the use of the facilities. The Supreme Court of Puerto Rico held that the act of denying the plaintiff use of the facilities constituted the unfulfillment of a reciprocal obligation of the contract or the real motive underlying the contract which affected the principal object of the contract; thus, the defendant's actions gave rise to an action for resolution under Article 1077. *Id.* at 6638. Similarly, in *Vélez v. Ríos*, 76 P.R.R. 806 (1954), the

incorporadas a un contrato unilateral or bilateral, tienen puro carácter accesorio o complementario, con relación a aquellas prestaciones y contraprestaciones, en su caso, que constituyen el objeto principal del contrato...."

**13.** As codefendant Island Resorts has pointed out, it accepted the terms of the November 30, 1984, oral contract and agreed that it would have an 8 percent interest in the minority shares of the corporation which would acquired Dorado Beach Hotel Corporation.

*See* Plaintiff's Exhibit 5.

Supreme Court concluded that a lease agreement which "absolutely" prohibited the lessee from cutting certain trees could be resolved under Article 1077 when the lessee cut the trees, since the specific clause prohibiting the "felling" was an essential obligation underlying the agreement. *See also Del Toro,* 96 P.R.R. at 668–69 (in lease agreement, the mutual consideration in the contract consists of the lessor putting the lessee in the peaceful enjoyment of the property leased, and the lessee's reciprocal obligation of the payment of the rent; failure to furnish the lessee with "peaceful enjoyment" is an unfulfilled obligation entitling lessee to resolutory action); *Vidal,* 65 P.R.R. at 356 (plaintiff's servitude granted to defendant and defendant's grant to plaintiffs of right to take 18,000 gallons of water every twenty four hours formed the reciprocal obligations of the contract so that defendant's use of water for purposes other than those stipulated was not an unfulfilled obligation giving rise to the resolution of the contract).[14]

Clearly, none of these cases remotely resembles the fact pattern presented in this case. The reciprocal obligations of the contract between plaintiff and Pritzker have been performed: the Pritzker interests furnished the money for the deal and reimbursed plaintiff for the costs he had incurred, and plaintiff received a twenty percent interest (of which Island Resorts owns eight percent) in the corporation acquiring Dorado Beach Hotel Corporation; and the Pritzker interests received a majority (eighty percent) interest in the corporation acquiring Dorado Beach Hotel Corporation and the long-term contract for managing the hotel properties. Even if we accept plaintiff's assertion that an *undiluted* interest in the stock of the corporation acquiring Dorado Beach Hotel Corporation was a reciprocal obligation and his motive

for entering into the oral agreement, this obligation has not been unfulfilled since the SSA has been annulled and plaintiff is left with his twelve percent interest, *see* Section III, *supra,* and no option clause diluting this interest.

Therefore, we conclude that the penalty for defendant's breach has "no consequences in the sphere of reciprocity.…" *Del Toro,* 96 P.R.R. at 669 (citation omitted). The plaintiff is therefore not entitled to the resolution of the November 30, 1984, oral contract.

## III. ISLAND RESORTS

■ Codefendant Island Resorts now requests relief, arguing that it should be entitled to have the SSA declared null as to its eight percent interest in HTP Corporation and to have the oral contract resolved. However, throughout the trial it made no claims whatsoever that its consent to enter into the SSA was obtained through duress or deceit. As codefendant Pritzker has pointed out, Resorts' consent to enter into the SSA was evidenced by its separate execution of the SSA. *See* Plaintiff's Exhibit 6 at 16. Under the Civil Code, the validity of the consent and of the contract entered into between the consenting parties is always presumed, *Capó Caballero v. Ramos,* 83 D.P.R. 650, 673 (1961); *Mancheño v. Le Brun,* 14 D.P.R. 474, 484–85 (1908), and the existence of duress or deceit which vitiates the consent is a question of fact that must be proven. *Carrasquillo v. Lippitt & Simonpietri, Inc.,* 98 D.P.R. 659, 662 (1970); *Agosto v. Porto Rican Express Co.,* 47 D.P.R. 897 (1935); *Macheño,* 14 D.P.R. at 484–85. Therefore, in order to have the SSA declared null as to its eight percent interest, Island Resorts should have filed a crossclaim against the other codefendants, alleging that it entered into the SSA out of deceit of duress, and arguing this issue at

14. Other cases dealing with Article 1077 actions for resolution or specific performance include *De la Haba v. Gay & Co.,* 52 P.R.R. 568 (1938) (defendant's failure to cancel encumbrances, terminate and record title proceeding under deed of sale was unfulfilled obligation justifying resolutory action); *Ayende v. Crespo,* 38 D.P.R. 141 (1928) (dissolution of partnership under predecessor to 31 L.P.R.A. § 3052 when defendant partner failed to fulfill reciprocal obligation of making contribution to partnership); *Cruz v. Martinez,* 29 D.P.R. 66 (1921) (failure to pay sum as difference in value of items in contract for exchange was unfulfilled obligation giving rise to action for resolution or specific performance).

trial in order to prove it was entitled to exercise an action for nullity or resolution pursuant to the relevant provisions of the Civil Code. Because Island Resorts chose not to file any claims demanding any relief, and did not allege and present any facts to prove the essential elements required to grant it the relief it now requests, the Court is in no position to provide it with any remedy. *See* Rule 54 of the Federal Rules of Civil Procedure (when more than one claim for relief is presented in an action, *whether as a claim, counterclaim, crossclaim, or third-party action,* the court may direct the entry of a final judgment as to one or more but fewer than all of the claims; every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled); 10 C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 2664 (1983) (hereinafter Wright & Miller) ("... the court cannot provide a remedy, even if one is demanded, when ... [the party requesting it] has failed to set out a claim for relief...."). *Cf.* 5A *Corbin on Contracts* § 1216 ("All that an injured party needs to do, in order to get an appropriate remedy for a wrong, is to bring suit for it, following the procedures established for such cases....").[15]

Subsequent to plaintiff's entering into the oral contract with codefendant Pritzker, Code and Island Resorts entered into a written agreement accepting the terms of the oral contract and specifying that the minority interest between plaintiff and Island Resorts would be divided to give Code a twelve percent interest and Island Resorts an eight percent interest in the holding entity which would purchase Dorado Beach Hotel Corporation. *See* Plaintiff's Exhibit 5. As Island Resorts has pointed out, this agreement has not been annulled and remains valid. Because this agreement still remains valid, and the SSA has not been annulled as to codefendant Resorts' eight percent interest, the plaintiff is left with a twelve percent interest in the shares of the corporation which purchased the stock of the Dorado Beach Hotel Corporation. The obligations and relations between the plaintiff and the codefendants, except Island Resorts, related to plaintiff's twelve percent interest in HTP Corporation shall therefore be governed by the terms of the November 30, 1984, oral agreement. Island Resorts' eight percent interest shall be governed by the written Stock Subscription Agreement which includes the option clause.

## IV. COSTS

█ Rule 54(d) of the Federal Rules of Civil Procedure states that "except when express provision therefor is made either in a statute of the United States or in these rules, costs shall be allowed as of course to the prevailing party unless the court otherwise directs...." Under this Rule, the Court has discretion to refuse to tax costs in favor of the prevailing party. *Crawford Fitting Co. v. J.T. Gibbons,* 482 U.S. 437, 442, 107 S.Ct. 2494, 2497, 96 L.Ed.2d 385 (1987). Title 28 U.S.C. § 1920 lists the expenses a federal court may tax as costs under Rule 54(d). According to this statute, a judge may tax as costs the following: (1) fees of the clerk and marshal; (2) fees of the court reporter; (3) fees and disbursements for printing and witnesses; (4) fees for exemplification and copies of papers necessarily obtained for use in the case; (5) docket fees specified by statute; (6) compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services specified by statute.

The plaintiff has requested costs in the amount of $85,720.17 for expenses incurred during trial. Defendant Pritzker has objected to several of the items claimed as costs.

### A. Subpoenas

█ Although section 1920(1) provides costs for fees of the clerk and the marshal, plaintiff's claimed cost of $30.00 for service of process on New Horizons, Inc. and Dora-

---

**15.** We note that the Supreme Court of Puerto Rico does not use common law precepts to solve civil law cases, but rather to serve as comparative law—as examples from other legal systems. *Valle v. American International Insurance Co.,* 108 D.P.R. 692, 696–97 (1979).

do Rockwood Corporation is denied as both these defendants were dismissed. The $30.00 service of process fee for each is therefore unwarranted.

### B. Attorney's Travel Expenses Associated with Depositions

■ Similarly, plaintiff's request for costs in the amount of $6,489.32 for the taking and defending of depositions outside of Puerto Rico is denied. Attorney's travelling expenses associated with depositions are not taxable costs, barring exceptional circumstances. 10 Wright & Miller, *Federal Practice and Procedure* § 2676 (Supp.1990) (citations omitted). Because there are no exceptional circumstances in the instant case, the plaintiff is not entitled to these expenses as taxable costs.

We note that in many cases, the parties usually agree to take a deposition outside of Puerto Rico for the convenience of the deponent. As part of that agreement, the parties often stipulate to the payment of certain costs, such as attorney travelling expenses, in exchange for taking the deposition outside of Puerto Rico. Because there has been no such agreement in this case, the Court cannot impose the payment of these expenses.

### C. Expert Witness Fees

■ Plaintiff has further requested the amount of $2,500.00 for expert witness Robert McCloskey, and $70,000.00 for expert witness Albert Gomes. Because these experts are not court appointed, we are compelled to award only $30.00 per day for each expert witness.

Title 28 U.S.C. § 1920 permits a court to tax as costs "(3) [f]ees and disbursements for printing and witnesses ... [and] (6) [c]ompensation of court appointed experts..." Title 28 U.S.C. §§ 1821(a)(1) and (b) defines the attendance fee for witnesses specified in § 1920(3):

(a)(1) Except as otherwise provided by law, a witness in attendance at any court of the United States ... shall be paid the fees and allowances provided by this section.

\*    \*    \*    \*    \*    \*

(b) A witness *shall* be paid an attendance fee of $30 per day for each day's attendance....

(Emphasis supplied.)

This section of the statute is a congressional mandate which establishes a limit on fees to be taxed as costs for a litigant's witnesses under § 1920(3) of the statute. *Crawford Fitting Co.*, 482 U.S. at 442, 107 S.Ct. at 2497. The district court therefore has no discretion to award more than $30.00 a day as costs for an expert witness, unless the witness is court appointed pursuant to 28 U.S.C. § 1920(6), for which there is no similar statutory provision limiting compensation for these experts. *Id.* Because neither of the plaintiff's experts were court appointed, the maximum amount the Court can permit as fees for these witnesses is $30.00 for Mr. Gomes' attendance on the fourth day of trial, and $30.00 for Mr. McCloskey's attendance on the ninth day of trial.

### D. Fees for Court Reporters for Sworn Statement, Cancelled Deposition, and Transcript of Trial

Section 1920(2) of Title 28 states that the judge may tax as costs "[f]ees of the court reporter for all or any part of the stenographic transcript *necessarily obtained* for use in the case...." (Emphasis added.) Courts generally consider a transcript "necessarily obtained" when it was necessary to counsel's effective performance and proper handling of the case, *Paul N. Howard Co. v. Puerto Rico Aqueduct & Sewer Authority*, 110 F.R.D. 78, 81 (D.P.R. 1986) or when requested by the court. 10 Wright & Miller at § 2677. The words "use in the case" signify that the transcript must have a direct relationship to the determination and result of the trial. *Id.*

■ Plaintiff requests costs in the amount of $1,420.00 (1,420 pages at $1.00 per page) for the daily transcript of the trial. After considering and reviewing the complexity of the issues in this case, the length of the trial, the nature of each witness' testimony, the fact that the use of Dopp's testimony from the beginning of trial was significant for the remaining trial

strategy, *Ingersoll Milling Machinery Co. v. Otis Elevator Co,* 89 F.R.D. 433, 434 (N.D.Ill.1981), and the use of the transcript in the preparation of the Court's Opinion and Order, we conclude that the transcript was "necessarily obtained" for use in this case. Plaintiff's request for $1420.00 for the cost of the daily transcript is therefore granted.

■ Plaintiff also seeks costs in the amount of $50.00 as the court reporter's appearance fee for a cancelled deposition in February of 1989. Because the plaintiff has not stated whose deposition was canceled, the date the deposition was to occur, and the circumstances under which the deposition was cancelled, he has inadequately justified the receipt of such costs. Plaintiff is therefore not entitled to this amount.

■ Similarly, plaintiff's application for costs equal to $203.00 to cover the court reporter's fees for the sworn statement of Timothy Denoe is denied. Defendants were not aware of this sworn statement until after the deposition of Mr. Denoe, which was ordered by the Court, the plaintiff did not offer this sworn statement into evidence, and it was not necessary for the plaintiff's counsel's effective performance in the case. Thus, the sworn statement was not "necessarily obtained" for use in the trial.

## V. ATTORNEY'S FEES

Finally, plaintiff asks for attorney's fees for obstinacy pursuant to Rule 44.1(d) of the Puerto Rico Rules of Civil Procedure. This Rule states that "[i]n the event any party or its lawyer has acted obstinately or frivolously, the court shall, in its judgment, impose on such person the payment of a sum for attorney's fees which the Court decides corresponds to such conduct...." 32 L.P.R.A. App. III, Rule 44.1(d) (Supp. 1988).

■ The determination of whether or not a party has been obstinate lies within the trial court's discretion, and must be decided upon the facts and circumstance of each particular case. *Reyes v. Banco Santander,* 583 F.Supp. 1444 (D.P.R.1984); *Raoca Plumbing and Sprinkler Corp. v. Transworld Assurance Co.,* 114 D.P.R. 464, 468 (1983). Once the court concludes that a party has been obstinate, it is compelled to impose the payment of attorney's fees on that party. *Paul N. Howard Co.,* 110 F.R.D. at 83; *Pereira v. International Basic Economic Corp.,* 95 P.R.R. 28, 67 (1967).

After due consideration, we conclude that the defendant was obstinate, and that the plaintiff is entitled to reasonable attorney's fees if he can sufficiently prove them. Although we acknowledge it is customary for the local courts to award attorney's fees under this Rule without taking evidence of attorney services, *see Pan American World Airways, Inc. v. Ramos,* 357 F.2d 341, 342 (1st Cir.1966) *cited in Paul N. Howard Co.,* 110 F.R.D. at 83, the plaintiff has requested a lump sum of $200,-000.00, without including any fee schedule for hours worked, work performed, rate per hour, and attorney performing the work. The plaintiff shall therefore have ten days from the issuance of this Opinion and Order to submit a verified schedule of attorney's fees which substantially complies with the First Circuit standard established for the award of attorney's fees under 42 U.S.C. § 1988 [16] so that this Court can properly rule on plaintiff's request. No extensions shall be granted. We realize that this request for attorney's fees is made pursuant to a local rule, rather than 42 U.S.C. § 1988. However, we think that a reasonable prerequisite for any type of application for attorney's fees is the inclusion of a schedule delineating the particular items the First Circuit has required for applications for attorney's fees under 42 U.S.C. § 1988.

**16.** According to *King v. Greenblatt,* 560 F.2d 1024, 1027 (1st Cir.1977), *cert. denied,* 438 U.S. 916, 98 S.Ct. 3146, 57 L.Ed.2d 1161 (1978) and its progeny, "the court must secure from the attorneys a full and specific accounting of their time...." This "full accounting" includes a list of the different tasks each attorney performed, the total number of hours, the hourly billing rate, the dates when the different tasks were performed, and the amount of time spent on each task specified. *Calhoun v. Acme Cleveland Corp.,* 801 F.2d 558, 560 (1st Cir.1986).

## VI. PRE–JUDGMENT AND POST–JUDGMENT INTEREST

██ Pursuant to Rule 44.3 of the Puerto Rico Rules of Civil Procedure, 32 L.P.R.A. App. III, Rule 44.3 (Supp.1989), the court, upon the finding of temerity, shall impose on the party who has acted imprudently the payment of interest at the rate to be determined by regulation, from the filing of the suit in all suits for damages and up to the date on which the sentence is issued to be computed on the amount of the sentence. As we have concluded that the defendant acted obstinately, the defendant shall pay interest at the rate of eleven percent from the date of the filing of this suit, August 16, 1988, until the date of the Judgment on the Jury's Verdict, March 23, 1990. Further, 28 U.S.C. § 1961(1) provides that "interest shall be allowed on any money judgment in a civil case recovered in a district court ... [and] shall be calculated from the date of the entry of the judgment, at a rate equal to the coupon issue yield equivalent ... immediately prior to the date of the judgment ..." This statute setting a federal rate of interest-post-judgment applies to actions based upon diversity of citizenship. *Harmon v. Clark Equipment Co.,* 657 F.Supp. 873, 874 (D.Me.1987). Accordingly, the Court concludes that post-judgment interest on the judgment of $2,000,000.00 entered on March 23, 1990, is to be computed at the rate of seven point zero two percent (7.02%), the current Treasury bill rate, from that date.

## VII. CONCLUSION

Wherefore, in view of the foregoing, plaintiff's motion to amend the judgment is GRANTED insofar as the Stock Subscription Agreement entered into on December 3, 1984, is declared null as to plaintiff's eight percent interest in HTP Corporation. Plaintiff's request for resolution of the oral contract is DENIED. The obligations and relations between the plaintiff and codefendants, with the exception of Island Resorts, related plaintiff's twelve percent interest in HTP Corporation shall therefore be governed by the terms of the verbal contract.

Island Resorts' Motion to Amend the Judgment is DENIED. Island Resorts' eight percent interest shall be governed by the written Stock Subscription Agreement which includes the option clause.

Further, the Court hereby taxes the following expenses as costs:

| | | |
|---|---|---|
| A. | Filing Fee | $ 120.00 |
| B. | Service of Process (Summons to Defendants and Subpoenas to Witnesses) | |
| | 1988 | |
| | September | |
| | Summons—R. Schulze | 60.00 |
| | 1989 | |
| | March | |
| | Subpoena—Dorado Beach Víctor López (Two Trips) | 75.00 |
| | Subpoena—Eugene Romano—Condado | 25.00 |
| | Subpoena—Francisco Sánchez Arán | 25.00 |
| | Subpoena—José E. Fernández—Humacao | 75.00 |
| | April | |
| | Subpoena—Eugene Romano | 15.00 |
| | Subpoena—Francisco Sánchez Arán | 15.00 |
| | Subpoena—José E. Fernández—Humacao | 50.00 |
| | Subpoena—Héctor González—Santurce | 25.00 |
| | 1990 | |
| | January (Subpoenas for new trial date) | |
| | Subpoena—Héctor González | 35.00 |
| | Subpoena—Eugene Romano | 35.00 |
| | Subpoena—Francisco Sánchez Arán | 35.00 |
| | Subpoena—Timothy Denoe | 35.00 |
| | Subpoena—José E. Fernández | 60.00 |

C. Witnesses Fees
   1989
   March
   Héctor González ........................................... $15.00
   Francisco Sánchez Arán ............................... 15.00
   Dorado Beach Hotel Corp. ........................... 15.00
   Eugene Romano ............................................ 15.00
   José E. Fernández ........................................ 15.00
   1990
   Timothy Denoe ............................................. 30.00
   Eugene Romano ............................................ 30.00
   José E. Fernández ........................................ 30.00
   Francisco Sánchez Arán ............................... 30.00
   Héctor González ........................................... 30.00

D. Expert Witnesses
   Robert F. McCloskey .................................... 30.00
   Albert Gomes ................................................ 30.00

E. Court Reporters for Depositions
   1989
   January
   Deposition of Gerald Leval .......................... 369.75
   February
   Deposition of Jay Pritzker ........................... 463.60
   Deposition of Thomas Pritzker and Richard Schulze ... 1,034.85
   Deposition of Phillip DiGennaro ................... 305.75
   March
   Deposition of Philip M. Kayman and Nathan Shapiro ... 736.20
   Deposition of Alvaro Sifuentes ..................... 196.50

F. Daily Transcripts of Trial
   March 12 through March 23, 1990 (1,420 pages at $1.00 per
   page) ............................................................. 1,420.00

G. Copies Expenses
   1989
   February
   Reproduction documents by Insty–Prints ..... 123.20
   Reproduction documents by Copy Jet, Inc. .... 9.00
   Reproduction documents by Copiadora Doubledey Inc. Voucher
   7992 .............................................................. 477.90
   Reproduction documents by Copiadora Doubledey Inc. Voucher
   8100 .............................................................. 159.10
   March
   Reproduction documents by Insty–Prints ..... 123.00
   Reproduction documents by Insty–Prints ..... 89.00
   TOTAL COSTS TO BE TAXED ....................... $6,477.85

———————

IT IS SO ORDERED.